**Carol Jean VOSCH, executrix of the last will of Charles Lowry, deceased and David Gaibis and others similarly situated, Appellees,**

v.

**WERNER CONTINENTAL, INC., Appellant.**

**No. 83–5468.**

United States Court of Appeals, Third Circuit.

Argued March 2, 1984.

Decided May 14, 1984.

Ronald A. Berlin, Paul D. Boas (argued), Berlin, Boas & Isaacson, Pittsburgh, Pa., for appellees.

Francis M. Milone (argued), Kenneth D. Kleinman, Philadelphia, Pa., for appellant; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Before ADAMS and SLOVITER, Circuit Judges, and KELLY, District Judge [*].

## OPINION OF THE COURT

ADAMS, Circuit Judge.

David Gaibis and Charles Lowry were employed as over-the-road drivers by Werner Continental, Inc. (Werner) as its break-bulk terminal in West Middlesex, Pennsylvania. Werner, a freight carrier certified by the Interstate Commerce Commission (ICC), was acquired in January 1979 by Hall's Motor Transit Company (Hall's).

After having been dismissed from their jobs for "chronic and habitual absenteeism," Gaibis and Lowry brought suit under Section 301 of the Labor Management Re-

[*] Honorable James McGirr Kelly, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

lations Act, 29 U.S.C. § 185 (1976), and the Fair Labor Standards Act, 29 U.S.C. § 216 (1976). The plaintiffs asked that three grievance awards affirming their dismissal be set aside and that Hall's be enjoined from requiring its drivers to comply with the company's dispatch system. The district court granted this relief, and Hall's filed a timely notice of appeal.[1] Because the complaint did not state a cause of action upon which relief may be granted, we must now vacate the judgment of the district court.

## I

Freight loads are dispatched from Hall's West Middlesex complex as they become available. Hall's drivers receive their assignments by way of a telephone dispatch system that must meet the Federal Motor Carrier Safety Regulations (FMCSR's) governing driving hours and rest periods of interstate drivers. These regulations are promulgated by the Federal Highway Administration (FHA) of the Department of Transportation and are administered by the FHA's Bureau of Motor Carrier Safety (BMCS).[2]

Under the FMCSR's, 49 C.F.R. § 395.1 *et seq.* (1982), drivers must maintain an hour-by-hour log and must attribute their time to one of four categories:

1) Off-duty time (the driver is not on duty and is not required to be ready for work);

2) Driving time (the driver is at the controls of a motor vehicle in operation);

3) On-duty/not-driving time (all time other than driving time from the time a driver begins work or is required to be ready for work until he is relieved from work and responsibility for performing work); and

4) Sleeping berth (a category not relevant to this litigation).

The federal safety regulations require that drivers be given eight hours of off-duty time after ten hours of driving time or fifteen hours of on-duty time. Under its dispatch system, Hall's may inform a driver by telephone that a load is available any time after the completion of the statutory rest period. Because the demand for freight services is unpredictable, a telephone dispatch may come at any time. Hall's directs its drivers to log time awaiting telephone dispatch as "off-duty." They are not paid for this time and are subject to discipline if they log the waiting period as "on-duty/not-driving."

Dispatchers at the Middlesex terminal maintain "log audit cards," on which a notation is made whenever a dispatcher fails to reach a driver who has completed the required rest period. Missed calls can lead to progressively more severe forms of discipline, ranging from a letter of reprimand to dismissal in cases of "chronic and habitual absenteeism."

## II

In November 1977, Gaibis, in his capacity as union steward, filed a grievance, pursuant to the industry-wide collective bargaining compact, the National Master Freight Agreement (NMFA). He alleged that he and his colleagues had been required under peril of discipline to be constantly available

---

**1.** The district court denied plaintiffs' claim under the Fair Labor Standards Act. It held that plaintiffs had not properly stated a claim under the minimum wage regulations and that Hall's was exempt from the maximum hours regulations by virtue of the authority vested in the Secretary of Transportation to prescribe rules governing interstate transportation under 49 U.S.C. § 304 (1976). *Gaibis v. Werner Continental,* 565 F.Supp. 1538, 1552 (W.D.Pa.1983). The district court did not address the assertion in the complaint that the dispatch system and the arbitration awards "smack of involuntary servitude" in violation of the Thirteenth Amendment

to the Constitution of the United States. On appeal, Gaibis and Lowry have not pressed the Fair Labor Standards claim or the constitutional issue.

**2.** The ICC has the duty under 49 U.S.C. § 304 (1976) to issue safety regulations governing the interstate transportation of goods by motor carriers. That duty was transferred to the Department of Transportation, which delegated the authority to issue safety regulations to the FHA. *See* 49 U.S.C. § 1655 (1976); 49 C.F.R. § 301.60 (1982).

for dispatch upon completion of the statutorily mandated rest period. He also asserted that Werner required its drivers to log the time awaiting dispatch as off-duty, even though under federal regulations this time should be logged as compensible on-duty/not-driving time.

Gaibis' grievance was heard by the Western Pennsylvania Teamsters and Employees Joint Area Committee (WPJAC), a panel established under the NMFA. After that Committee became deadlocked, Gaibis appealed to the Eastern Conference Joint Area Committee (ECJAC), the second stage of the NMFA grievance proceedings. The ECJAC dismissed Gaibis' complaint, asserting that the grievance was improperly before the committee.

In January 1978, Werner suspended Lowry for three days without pay; Lowry had been, in the company's view, unavailable for dispatch because he was not at home and ready to receive a dispatch on several occasions while off-duty. The WPJAC reached a deadlock on the grievance Lowry filed to protest this suspension. The union local joined Lowry in this protest and in the subsequent appeal to the ECJAC, which held that Lowry had been suspended for just cause.

Gaibis and Lowry filed a complaint in the district court in October 1978. Hall's discharged Lowry in January 1979 for "chronic and habitual absenteeism."[3] The union filed a grievance with the WPJAC, which reinstated Lowry without back pay and ordered the union and Hall's to modify the procedure by which drivers are notified of work opportunities. In March 1979, Lowry was again discharged for chronic and habitual absenteeism. Once again Lowry and the union resorted to the grievance procedure. An arbitrator ordered that Lowry be reinstated, but without back pay. In December 1979, Lowry was discharged for a third time for chronic and habitual absenteeism. This time an arbitrator upheld the discharge.

In May 1980, Gaibis was discharged for chronic and habitual absenteeism. The union filed a grievance on Gaibis' behalf, claiming that his discharge violated the collective bargaining agreement and federal regulations. The WPJAC upheld the discharge without issuing an opinion.

Before the district court, Gaibis and Lowry asserted that Hall's dispatch procedure violates public policy, the United States Constitution, and several federal laws and safety regulations. They complained that the decisions of the grievance committees and the arbitrators upholding their discharges also violated public policy and were in addition arbitrary, capricious, and contrary to the NMFA.

### III

In response to defendants' motion that the dispute be referred to the Bureau of Motor Carrier Safety (BMCS), the district court ruled that the Bureau had "primary jurisdiction" over certain questions of transportation practice and policy raised by the complaint filed by Gaibis and Lowry.[4] The court referred the matter to the BMCS to determine, among other things, whether Hall's logging and dispatch system violated the Federal Motor Carrier Safety Regulations.

After conducting a hearing, an Administrative Law Judge determined that Hall's dispatch and logging system did not infringe the BMCS hours-of-service regulations. See 49 C.F.R. § 395.2(a) (1982). He did find, however, that the system transgressed federal safety regulations, specifically FMCSR 392.3, by not allowing drivers to "book off" at the time of dispatch,

---

**3.** Dismissal for chronic and habitual absenteeism is sanctioned by the NMFA, which also establishes a grievance procedure by which a driver who believes that he has been unfairly disciplined can bring his claim to arbitration.

**4.** Primary jurisdiction is a judicially crafted doctrine which allows for preliminary review by specialized administrative agencies of claims raised before federal courts. See *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 736 (3d Cir.1983).

that is, to decline an assignment because of fatigue.[5]

The FHA's Associate Administrator for Safety formally reviewed the ALJ's Recommended Decision. *See* 49 C.F.R. § 386.-38(g) (1982). He agreed with the ALJ that Hall's dispatch system, and specifically the requirement that drivers log time awaiting dispatch as off-duty, did not violate the maximum hours provisions of the FMCS regulations. Unlike the ALJ, however, the Associate Administrator found that the dispatch system was sufficiently flexible for drivers to obtain adequate rest during their off-duty time. He held that the dispatch procedure and the disciplinary system complied with federal safety regulations and that Hall's did not knowingly dispatch fatigued drivers.[6]

The dispute then returned to the district court, which concluded that it was not bound by decisions rendered through an administrative process since the litigation turned entirely on a legal question, namely the construction of BMCS regulations. *Gaibis, supra*, 565 F.Supp. at 1548. The district judge held that requiring a driver to log time spent awaiting dispatch as off-duty abridged the plain meaning of the regulations governing work hours. He also found that Hall's dispatch system violated federal safety regulations by forcing fatigued drivers onto the road. The district court vacated the arbitration awards, reinstated the plaintiffs as employees of Hall's, and ordered that they be compensated for lost wages. The district court also enjoined further use of the current dispatch system and directed Hall's to establish a new procedure that conformed to certain conditions specified in the court's judgment.

## IV

Given the procedural complexity of the matter before us, we will first turn our attention to the complaint filed in the district court and to the claims for relief asserted therein.

### A

Gaibis and Lowry's complaint as amended appears to seek relief directly under the FMCS regulations and § 304 of the Interstate Commerce Act, 49 U.S.C. § 304 (1976).[7] Section 304 of the Interstate Commerce Act establishes the authority of the ICC (and now the BMCS), *see* note 3 *supra*, to regulate the maximum hours of employee service and the operational safety of motor carriers. The FMCS regulations have been promulgated pursuant to that statutory grant of authority. Section 304 does not on its face, however, authorize an action brought in federal court by an individual to challenge a practice that is at odds with that section or the FMCS regulations.

Private enforcement of the Interstate Commerce Act is governed by 49 U.S.C. § 11708(a) (Supp. IV 1980), which allows an individual injured as a result of a "clear violation" of certain sections of Title 49 to bring a civil action to enforce those portions of the Code that have been violated. The statutory provisions whose enforcement may be the subject of a private suit, however, deal generally with the issuance of operating certificates and permits, rather than the promulgation of safe-

---

**5.** FMCSR 392.3 requires that:
[n]o driver shall operate a motor vehicle, and a motor carrier shall not require or permit a driver to operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the motor vehicle.
49 C.F.R. § 392.3 (1982).

**6.** BMCS records indicate that Hall's accident rate is well below the national average for carri-

ers of a similar size. In 1979, Hall's drivers had 0.425 accidents per million miles travelled. The average for common carriers with fleets comparable to Hall's was 1.406 accidents per million miles. App. 409.

**7.** In 1978, Congress began to revise and re-codify the Interstate Commerce Act. Section 304 has been repealed, and its several provisions now appear in various portions of Title 49. The revision does not affect the substance of old § 304 in any way relevant to this litigation.

ty regulations. *See Baggett Transp. Co. v. Hughes Transp., Inc.*, 393 F.2d 710 (8th Cir.), *cert. denied*, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968). Congress, then, has not included § 304 among those sections whose abridgement may properly lead to a private suit under § 11708.[8] *Accord Hamper v. Transcon Lines Corp.*, 425 F.2d 1178, 1179 (10th Cir.1970).

## B

The parties to this appeal argue that Gaibis and Lowry have stated a cause of action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), which provides for suits by and against labor organizations for violations of collective-bargaining agreements.[9] We cannot agree.

Like so many collective-bargaining contracts, the NMFA contains a set of procedures for settling disputes through a grievance process culminating in arbitration. Congress itself has declared that the best method for resolving grievances between employers and employees represented by a union is the procedure to which the parties themselves have agreed. *United Steelworkers of America v. Am. Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 14 L.Ed.2d 1403 (1980). The Supreme Court has declared that this congressional policy may be effectuated only if courts defer to the tribunals contractually designated to settle disputes. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

■ With the full support of their union, Gaibis and Lowry brought their claims to arbitration. In this appeal they ask us to affirm the judgment of the district court that the arbitral decisions should be overturned. However, some of the same considerations that undergird the policy of requiring aggrieved employers and employees to avail themselves of contractually specified arrangements also limit appeals from arbitral decisions by disappointed grievants. Employees may appeal an adverse decision under § 301 if they can show that their union breached its duty of fair representation, that is, that the union's conduct was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 186, 190, 87 S.Ct. 903, 914, 916, 17 L.Ed.2d 842 (1967); *Rothlein v. Armour & Co.*, 391 F.2d 574, 578–79 (3d Cir.1968). Employees may also have their claim heard in a federal court under § 301 if the grievance procedure was a "sham, substantially inadequate or substantially unavailable." *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981) (quoting *Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F.2d 167, 171 (5th Cir.1971)).

■ Gaibis and Lowry do not challenge the fairness or adequacy of their union's representation in the arbitration procedure, nor do they impugn the integrity of the arbitration process. Their union did not join the suit in district court and was not named as a party to the proceeding. Consequently we are constrained to

---

**8.** *See* H.R.Rep. No. 253, 98th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad.News, 2923, 2931 (quoting S.Rep. No. 1588, 87th Cong., June 15, 1962) ("No district court is to entertain any action except where the act complained of is openly and obviously for-hire motor carriage without authority under the sections enumerated above...."). Gaibis and Lowry have not specifically asked this Court to find an implied right of action under § 304. We note, however, that the key to determining the existence of an implied remedy is "the intent of the Legislature." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981). The legislative history just cited

makes clear that the Congress' intent was to specify a certain few sections of the Interstate Commerce Act, whose violation could be redressed by an individual bringing suit in district court.

**9.** Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185 (1976).

conclude that the plaintiffs did not state a cause of action under § 301.[10]

## V

Although much has occurred since Gaibis and Lowry filed their original complaint, we cannot ignore the fact that the plaintiffs have not stated a cause of action upon which relief may be granted.[11]

Accordingly, the judgment of the district court will be vacated and the matter will be remanded to the district court so that it may be dismissed for failure to state a cause of action.

---

**10.** Appellants urge upon us a number of cases overturning arbitral awards that were inconsistent with public policy. While we agree that such inconsistency is a legitimate ground for upsetting an arbitral decision, we note that in each of the cases cited the trial court properly exercised jurisdiction in that one of the parties was a labor organization or the plaintiff alleged a violation of the duty of fair representation, or the collective bargaining agreement did not create a grievance mechanism. *See, e.g., Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (grievance mechanism); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888 (4th Cir.1980) (fair representation); *General Teamsters v. Consol. Freightways*, 464 F.Supp. 346 (W.D.Pa.1979) (union as party).

**11.** This is not to say that Gaibis and Lowry had no forum in which their objections to Hall's dispatch and logging procedure could have been heard. Under 49 C.F.R. § 386.12 (1983), it would appear that they could have filed a complaint with the Associate Administrator of the FHA, who is required to issue a notice of investigation, unless he determines that the complaint is meritless. Since the issue is not properly before us on this appeal, there is no occasion to speculate about the authority of a federal district court to review an FHA decision that a complaint is without merit.

After argument had been heard on this appeal, the Court granted a motion substituting Carol Jean Vosch, executrix of the last will of Charles Lowry, as appellee.