829 F.2d 892
 126 L.R.R.M. (BNA) 2717, 107 Lab.Cas. P 10,222,
2 Indiv.Empl.Rts.Cas. 1399
 Abraham GHEBRESELASSIE, Plaintiff-Appellant,
v.
COLEMAN SECURITY SERVICE; Ronald Farwell; Herman
Hendricks; Parking Concepts, Inc., Defendants-Appellees,
California Teamsters Public, Professional and Medical
Employees Local No. 911, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
Defendant-Counter-Claimant-Intervenor,
and
California Teamsters Public, Professional and Medical
Employees Local No. 911, International Brotherhood
of Teamsters, Chauffeurs, Warehousemen
and Helpers of America,
Defendant-Cross-Claimant.
 No. 86-6490.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1987.
Decided Oct. 7, 1987.
 
 James L. Brown, Supkoff and Brown, Los Angeles, Cal., for plaintiff-appellant Ghebreselassie.
 Robert Berchan, Booth, Mitchel, Strange & Smith, Los Angeles, Cal., for defendants-appellees Coleman Sec. Service, Ronald Farwell, and Herman Hendricks.
 Elaine Holland, Los Angeles, Cal., for defendant-appellee Parking Concepts.
 Robert D. Vogel, Los Angeles, Cal., for defendant-counter-claimant-intervenor California Teamsters Public, Professional and Medical Employees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, BEEZER and HALL, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Ghebreselassie appeals the district court's order vacating an arbitration award and its order granting summary judgment in his action alleging breach of a collective bargaining agreement, wrongful termination, defamation, negligence, malicious prosecution, and intentional infliction of emotional distress. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We reverse the order vacating the arbitration award and the summary judgment on Ghebreselassie's claim for breach of the collective bargaining agreement. We affirm the summary judgment with respect to Ghebreselassie's other claims.
 
 
 2
 * The City of Los Angeles Department of Airports (department) entered into a contract to have Parking Concepts, Inc. (employer) operate its airport parking lots. The employer hired Ghebreselassie as a parking lot cashier at one of these airport parking lots. The employer entered into a collective bargaining agreement with the Teamsters Union Local 911 (union) which governed the terms and conditions of Ghebreselassie's employment.
 
 
 3
 The department hired Coleman Security Service, Inc. (investigators) to investigate the airport parking lot cashiers to determine whether any were engaging in theft through "ticket manipulation." The investigators used the following procedure. Two investigators in separate cars would exit an airport parking lot directly behind each other. The first investigator would present a "test ticket" to the cashier and pay the required parking fee. The test ticket would be several days old and require a large payment, therefore presenting a tempting target for manipulation by a cashier. The second investigator would present a "follow-up ticket"--an ordinary ticket obtained from the ticket dispensing machine. Both investigators would record the serial numbers from the tickets, the amount of money paid, and a description of the cashier.
 
 
 4
 The parking lot gate arms would not open unless the cashier had placed the customer's ticket in the cash register where a validation number was imprinted on it. Therefore, if the cashier properly handled the two tickets, they would be stamped with sequential validation numbers. On the other hand, if the cashier substituted a small fee ticket for the large fee test ticket and pocketed the difference between the two fees, the test ticket would not appear. The cashiers were required to turn in all tickets and money collected during their shift. The department's auditor would complete the investigation by looking for the follow-up ticket and then looking for the test ticket which should be located immediately before the follow-up ticket.
 
 
 5
 The investigators performed this procedure on Ghebreselassie. The department's auditor determined that the "test ticket" was missing and provided this information to the investigators. The investigators then prepared a preliminary investigation report and presented it to the Los Angeles Police Department. The city prosecutor filed a criminal charge against Ghebreselassie. That same day, the employer terminated Ghebreselassie for alleged ticket manipulation. Ghebreselassie was acquitted of the criminal charge.
 
 
 6
 Ghebreselassie filed suit in California state court against the employer and the investigators (the company and two of its employees) alleging defamation, invasion of privacy, malicious prosecution, intentional infliction of emotional distress, negligence, and wrongful discharge. The union filed a grievance with the employer which proceeded to arbitration. The arbitrator found that Ghebreselassie was dismissed without just cause but denied a remedy because the grievance had not been timely filed by the union. Ghebreselassie then amended his complaint adding the union as a defendant and alleging that the union breached its duty of fair representation in the handling of his grievance. The union removed the action to the federal district court.
 
 
 7
 The district court granted the union's motion to vacate the arbitration award, but denied the union's motion for summary judgment on the fair representation claim. The district court granted the motions for summary judgment brought by the employer and the investigators on the tort and wrongful discharge claims, and entered judgment in favor of those defendants pursuant to rule 54(b) of the Federal Rules of Civil Procedure. Ghebreselassie appeals the orders vacating the arbitration award and granting summary judgment with respect to all of his claims against the employer and the investigators except invasion of privacy. His claim against the union alleging breach of its duty of fair representation is still pending in the district court.
 
 II
 
 8
 The district court granted the employer's summary judgment motion on Ghebreselassie's claim for wrongful discharge on the ground that it was preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185. Ghebreselassie does not dispute the court's conclusion that section 301 governs his wrongful discharge claim, but argues that the allegations in his complaint state a valid claim under section 301 and that summary judgment was therefore inappropriate.
 
 
 9
 Section 301 claims are founded on rights created by a collective bargaining agreement. Caterpillar Inc. v. Williams, --- U.S. ----, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (Caterpillar ); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). Where, as in the present case, a state law claim falls within the scope of section 301, it is subject to "complete preemption"--"any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 107 S.Ct. at 2430. Based on the complete preemption doctrine, Ghebreselassie contends that his wrongful discharge claim stated a valid claim under section 301.
 
 
 10
 The employer responds, however, that the complete preemption doctrine has only been applied at the request of a defendant who seeks to recharacterize a state law claim as one arising under federal law in order to remove a state court action to federal court. See, e.g., Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir.1980). In this case, removal jurisdiction was based on the fair representation claim against the union, not on the theory that Ghebreselassie's wrongful termination claim arose under section 301. Therefore, the employer argues, because Ghebreselassie framed his wrongful termination claim under state law and because none of the defendants have moved to recharacterize it as a federal law claim, it must be considered as framing only a state law claim. The employer then concludes that because the state law claim is preempted, Ghebreselassie is not left with any properly pleaded claim based on his alleged termination without just cause.
 
 
 11
 The employer's argument, although plausible, is flawed in two respects. First, preemption is a doctrine derived from the supremacy clause of the Constitution which bars states from enacting laws that interfere with federal law. See In re Cement and Concrete Antitrust Litigation, 817 F.2d 1435, 1444 (9th Cir.1987). Although section 301 of the LMRA may preempt or nullify certain aspects of state law, it does not cause any factual allegations in a complaint to disappear. After a court has determined that a certain state law is preempted, a separate question may remain as to whether the complaint's factual allegations state a claim under federal law or under non-preempted state law. Therefore, although section 301 preempts California's wrongful discharge law as applied to Ghebreselassie's complaint, it does not preempt Ghebreselassie's allegations.
 
 
 12
 Second, a properly pleaded claim in federal court need not specify under which law it arises. A complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "No technical forms of pleading ... are required." Id. rule 8(e)(1). For example, a claim for negligence under the Federal Employers' Liability Act does not need to mention that Act or even that the claim is intended to arise under federal rather than state law. See id. rule 84 appendix, form 14. A plaintiff who desires to invoke a district court's federal question jurisdiction may have to allege that a claim arises under federal law to satisfy the requirement that the complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." Id. rule 8(a)(1). But such a statement is not needed where, as in this case, "the court already has [federal question] jurisdiction and the claim needs no new grounds of jurisdiction to support it." Id. Therefore, Ghebreselassie is not precluded from arguing that he alleged a section 301 claim even though he failed to mention that section in his complaint.
 
 
 13
 If a complaint does not declare the legal theories upon which a plaintiff relies, a defendant can require a plaintiff to identify these theories through discovery, a motion attacking the pleadings, a motion for summary judgment, or at a pretrial conference. The choice-of-law issue for Ghebreselassie's termination claim arose for the first time when the employer moved for summary judgment on the ground that state law was preempted. In response, Ghebreselassie argued that summary judgment was inappropriate because he had stated a valid section 301 claim. Therefore, we do not face a situation where a plaintiff has misled a defendant as to the nature of his claim in his responses to discovery or his arguments regarding pretrial motions. Ghebreselassie contended from the moment the question first arose that he had framed a valid federal law claim. The employer does not argue that summary judgment was appropriate on the merits of Ghebreselassie's section 301 claim. Therefore, we conclude that Ghebreselassie has stated a valid section 301 claim and we reverse summary judgment with respect to this claim.
 
 III
 
 14
 Even if summary judgment is not appropriate on the merits of Ghebreselassie's section 301 claim, the employer argues that we should affirm summary judgment on the ground that the claim is barred for failure to exhaust internal union remedies. Both Ghebreselassie and the employer agree that his action for breach of the collective bargaining agreement is barred if internal union appeals procedures could have afforded "either complete relief to [Ghebreselassie] or reactivation of his grievance" against the employer. Clayton v. International Union, 451 U.S. 679, 692, 101 S.Ct. 2088, 2097, 68 L.Ed.2d 538 (1981); accord Scoggins v. Boeing Co., Inc., 742 F.2d 1225, 1229 (9th Cir.1984). The employer does not contend that the internal union appeals procedure would have resulted in the reactivation of Ghebreselassie's grievance against the employer. The employer does claim, however, that Ghebreselassie could have obtained the full relief he sought--monetary damages.
 
 
 15
 The employer points to a provision in the union's constitution, which allegedly provides such relief. Article XIX, section 9(a) states that
 
 
 16
 [d]ecisions and penalties imposed upon individual members, officers, elected Business Agents, Local Unions ... found guilty of charges may consist of reprimands, fines, suspensions, expulsions, revocations, denial to hold any office permanently or for a fixed period, or commands to do or perform, or refrain from doing or performing, specified acts.... If the fine is against a member or officer of a Local Union ... it shall be paid into the treasury of the Local Union.
 
 
 17
 This section does provide for a monetary sanction--a "fine"--but the money is not awarded to an aggrieved union member to recompense the damages he has suffered. The employer does not point to any other evidence in the record that would support its contention that monetary damages would be awarded Ghebreselassie if he prevailed in his internal union appeals.
 
 
 18
 The employer argues, however, that its interpretation of the union's constitution is supported by Tinsley v. United Parcel Service, Inc., 665 F.2d 778 (7th Cir.1981). That decision affirmed a summary judgment granted against an employee who had failed to exhaust remedies provided by the International Brotherhood of Teamsters, the same international union present in this case. Id. at 780. The conclusion implicit in the decision is that monetary damages were available under the Teamster's constitution. Id. Nevertheless, the opinion nowhere explicitly states that such damages are available, nor does it offer any support for its implicit conclusion. Although we have great respect for opinions of a sister court, we are unpersuaded that this case is authority that damages are available under the constitution involved in the action before us. The union's constitution which is before us does not on its face provide for damages for an aggrieved member, and the employer has not pointed to any other evidence that suggests that Ghebreselassie could have obtained the monetary relief he seeks by pursuing internal union appeals procedures. We therefore conclude that summary judgment is not appropriate on the ground that Ghebreselassie failed to exhaust internal union remedies. Cf. Winter v. Local Union No. 639, 569 F.2d 146, 149 (D.C.Cir.1977) (observing in dicta that a member of the Teamsters "probably could not have obtained money damages through union disciplinary channels").
 
 IV
 
 19
 Ghebreselassie appeals the district court's order vacating the arbitration award. The union argues that the order vacating the award should be upheld because Ghebreselassie lacks standing to appeal this issue and because the arbitrator decided an issue not submitted to him by the parties.
 
 A.
 
 20
 We first address the union's suggestion that a plaintiff in an action brought under section 301 lacks standing to contest an order vacating an arbitration award that was granted in response to his union's motion to vacate the order. We have recognized that an employee who alleges that his union breached its duty of fair representation has standing in federal court to litigate the propriety of an arbitration award in an action brought under section 301. Andrus v. Convoy Co., 480 F.2d 604, 606 (9th Cir.), cert. denied, 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973); see also Freeman v. Local Union No. 135, Chauffeurs, 746 F.2d 1316, 1321 (7th Cir.1984) (An individual employee may bring a section 301 action to seek judicial review of an arbitrator's award as long as he exhausts the contract's grievance procedures and alleges that the union breached its duty of fair representation during the arbitral process.); Vosch v. Werner Continental, Inc., 734 F.2d 149, 154 (3d Cir.1984) (Employees who allege a breach of the duty of fair representation may appeal an arbitration decision under section 301 if the grievance procedure was "substantially inadequate."), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985); Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir.1971) (same).
 
 
 21
 The fact that an individual employee could not have demanded that his union arbitrate his grievance under the contract does not determine whether he can appeal an order vacating an award in his favor. This is especially true where, as here, the employee was a named party in the proceeding below. See F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781, 629 F.2d 1204, 1211-12 (7th Cir.1980), cert. denied, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981).
 
 
 22
 The union has not cited any case or other authority to support its assertion that an employee in a section 301 action lacks standing to appeal an order vacating an arbitration award. Indeed, the union concedes that employees who allege a breach of the duty of fair representation are not barred from seeking an appeal of an arbitration decision. We see no reason to depart from this rule in this case.
 
 B.
 
 23
 The union argues that the order vacating the award was proper because the arbitrator acted beyond the scope of his authority by basing his decision to deny relief to Ghebreselassie on the union's failure to file timely the grievance. The union contends that the only issue that the union and the employer submitted to the arbitrator was the contractual propriety of Ghebreselassie's termination from employment, and that the question of timeliness therefore was not within the scope of the submission agreement.
 
 
 24
 It is firmly established, however, that a court should not reverse an arbitration award if it is based on a plausible construction of the collective bargaining agreement. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960) (Warrior & Gulf ); Edward Hines Lumber Co. v. Lumber and Sawmill Workers Local No. 2588, 764 F.2d 631, 634 (9th Cir.1985), cert. denied, 475 U.S. 1131, 106 S.Ct. 1661, 90 L.Ed.2d 203 (1986). Where a particular issue appears to lie outside the scope of the parties' agreement to submit disputes to arbitration, a federal court must defer to the arbitrator's resolution of the dispute unless the parties' arbitration agreement "is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1352-53 (1960).
 
 
 25
 In the present case, the parties asked the arbitrator to determine two questions: whether Ghebreselassie had been discharged for "just cause," and, if not, to what relief he was entitled. The arbitrator decided that Ghebreselassie had not been discharged for just cause. He then decided that Ghebreselassie was not entitled to relief because the grievance had not been timely filed. The union nevertheless argues that the decision to deny the grievance was improper because the parties had not mentioned the timeliness issue in their submission statement.
 
 
 26
 The union's argument that the arbitrator acted improperly in denying the grievance is unconvincing. In deciding that Ghebreselassie was not entitled to relief, the arbitrator decided an issue specifically submitted to him by the parties. His decision does not conflict with a provision in the collective bargaining agreement, but rests explicitly on his construction of its provisions.
 
 
 27
 The district court did not find that the arbitrator's decision regarding the timeliness issue conflicted with any provision of the collective bargaining agreement. For this reason, the case relied on by the district court in reaching its decision, Frederick Meiswinkel, Inc. v. Laborer's Union Local 261, 744 F.2d 1374 (9th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985), is inapposite. In that case, an arbitrator decided a jurisdictional dispute between two unions in the face of a provision in the collective bargaining agreement specifically stating that jurisdictional disputes were not arbitrable. We held that "[a]n award that conflicts directly with the contract cannot be a 'plausible interpretation' " of it. Id. at 1377. In the present case, in contrast, the arbitrator's decision to deny relief rests directly on his construction of the parties' submission agreement and on his interpretation of the collective bargaining agreement. We cannot say that the arbitrator's decision to deny the grievance on timeliness grounds was improper where, as here, both parties argued this issue before the arbitrator and neither objected to the introduction of evidence bearing on this issue.
 
 
 28
 We hold, therefore, that the district court erred in setting aside an arbitration award that was based upon a reasonable construction of the parties' arbitration agreement. For that reason, we reverse the order vacating the award.
 
 V
 
 29
 The district court granted summary judgment on Ghebreselassie's negligence claim against the investigators and the employer on two grounds: (1) the investigators and the employer did not owe Ghebreselassie a duty of reasonable care, and (2) if the investigators and the employer did have a duty, they did not breach it. In the district court, Ghebreselassie did not argue that the investigators and the employer owed him a duty, nor did Ghebreselassie point to any evidence from which one could infer that the investigators or the employer breached a duty of care. Ghebreselassie merely declared, without support, that his negligence claim raised disputed issues of fact. Because Ghebreselassie did not sustain his burden of coming forward with evidence to support his allegations, summary judgment was proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 9 L.Ed.2d 265 (1986).
 
 VI
 
 30
 We conclude that the district court properly granted summary judgment on Ghebreselassie's remaining state law claims. Ghebreselassie contends that the employer defamed him by making false statements in its "termination report" and in its written report to the state unemployment office and that the investigators' reports defamed him. Any communications to the unemployment office are entitled to a qualified privilege. See Cal.Civ.Code Sec. 47(2); William v. Taylor, 129 Cal.App.3d 745, 754, 181 Cal.Rptr. 423 (1982). The other reports by the investigators and the employer are also qualifiedly privileged because they were made "to a person interested therein ... by one ... who is requested by the person interested to give the information." Cal.Civ.Code Sec. 47(3) (West 1982). Ghebreselassie may defeat the qualified privilege by showing " 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will ... or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication." Roemer v. Retail Credit Co., 44 Cal.App.3d 926, 936, 119 Cal.Rptr. 82 (1975) (emphasis in original). Because Ghebreselassie fails to point to any evidence that would support such a showing, summary judgment was appropriate. Moreover, Ghebreselassie's defamation claim was the basis for his intentional infliction of emotional distress claim and, therefore, summary judgment was also appropriate on that claim. See Lerette v. Dean Witter Organization, Inc., 60 Cal.App.3d 573, 579, 131 Cal.Rptr. 592 (1986).
 
 
 31
 Finally, Ghebreselassie contends that the district court erred in granting summary judgment to the investigators and the employer on his malicious prosecution claims. "Malicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause....' " Sullivan v. County of Los Angeles, 12 Cal.3d 710, 720, 117 Cal.Rptr. 241, 527 P.2d 865 (1974) (emphasis in original), quoting 4 Witkin, Summary of California Law, Torts Sec. 242 at 2522-23 (8th ed. 1974). Ghebreselassie points to no evidence from which a fact-finder could reasonably infer that the investigators or the employer lacked probable cause or that they acted with malice. Summary judgment was appropriate.
 
 VII
 
 32
 We conclude that Ghebreselassie's wrongful termination claim stated a valid section 301 claim against his employer. We therefore reverse the summary judgment with respect to that claim and remand for further proceedings. We conclude that the district court erred in vacating the arbitration award and therefore reverse the order vacating the award. We affirm the summary judgment with respect to Ghebreselassie's other claims against the employer and the investigators.
 
 
 33
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.