**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0260-20

ERICK ESTIL,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT
BUS OPERATIONS, INC.,

    Defendant-Respondent.

---

Submitted December 13, 2021 – Decided December 29, 2021

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0690-20.

Fusco & Macaluso, PC, attorneys for appellant (Amie E. DiCola, on the brief).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent (John J. Periano and David M. Alberts, of counsel and on the brief).

PER CURIAM

Erick Estil appeals from the August 27, 2020 Law Division order confirming an arbitration award that resulted in the termination of his employment as a bus driver for New Jersey Transit Bus Operations, Inc. (NJT). Estil contends the trial judge erroneously failed to determine the award was the product of undue means, and the arbitrator failed to consider relevant evidence. NJT counters that Estil lacked standing to challenge the arbitrator's award, his application to vacate the award was untimely, and his substantive arguments lack merit. We affirm because Estil's application was untimely and otherwise lacked merit.

The procedural history and facts regarding Estil's termination are set forth at length in the arbitrator's thirty-one-page opinion and award and, for the purposes of this appeal, need not be repeated in the same level of detail. In the early afternoon of May 28, 2016, Estil was driving an NJT bus in the course of his duties, when he turned left at a Newark intersection, struck a pedestrian in the crosswalk, and ran over her legs with the front and rear wheels of the bus. The pedestrian suffered severe injuries, including the loss of both legs above the knee. A neighborhood store's surveillance camera captured the accident.

NJT and the Amalgamated Transit Union, Local 819 (Union), of which Estil is a member, were parties to a collective bargaining agreement (CBA). The

A-0260-20

CBA recognized NJT's managerial rights, including the right to "discharge [employees] for proper cause." The CBA also provided for resolution of disputes between NJT and the Union through a four-step grievance procedure, concluding with binding arbitration before a tripartite panel.

Following an internal investigation, NJT discharged Estil in August 2016, finding the accident was "severe, preventable," and caused by "gross negligence." Pursuant to a grading system, Estil was assessed the maximum of sixteen points, requiring his termination. After further proceedings, Estil's grievance remained unresolved and was arbitrated before a Union-designated arbitrator, an NJT-designated arbitrator, and a jointly-selected neutral arbitrator. The tripartite panel was asked to determine whether NJT "ha[d] proper cause to suspend and discharge Mr. Estil" and, if not, to determine the proper remedy.

At the arbitration, which spanned six non-consecutive days between November 16, 2017 and April 1, 2019, Estil did not testify but the Union presented the testimony of its safety specialist, Brian Sherlock. NJT called six witnesses including Dale Sulpy, its senior safety director, and Steven Schorr, who was qualified by the panel as an expert in accident reconstruction. The panel also considered the surveillance video footage depicting the accident, among other exhibits.

3

By split decision, the panel concluded NJT "had proper cause to charge Mr. Estil with gross negligence, and terminate him for the accident that occurred on May 28, 2016." The opinion and award were issued by the neutral arbitrator on September 26, 2019. The Union member of the panel dissented on September 30, 2019, and the award was delivered to the Union that same day.

The Union elected not to challenge the arbitration award, but through undated correspondence from its attorney, authorized Estil to pursue an appeal at his own expense and in his own name. The Union's attorney also indicated he "believe[d] N.J.S.A. []2A:23B-23 provides 120 days in which to appeal," but "caution[e]d" that the forty-five-day deadline cited by Estil's attorney "may be accurate or may be relying on the standard for court based arbitrations, which in [his] understanding, are non-binding and may be appealed de novo. Labor arbitrations are not akin to those [standards]."

On January 27, 2020 – nearly four months after the Union received notice of the award – Estil's retained counsel filed a verified complaint against NJT in the Law Division, seeking to vacate the award under N.J.S.A. 2A:24-8.[1] The

---

[1] Although Estil was not a party to the arbitration, he did not move for leave to intervene. See N.J.S.A. 2A:24-7 (providing "[a] party to the arbitration may . . . commence an action" to vacate an award). Instead, his complaint was filed in his name only.

next day, the motion judge issued an order to show cause and the matter proceeded in a summary manner. See R. 4:67-1; see also N.J.S.A. 2A:24-7.

Following briefing, oral argument was held on July 20, 2020. Anticipating NJT's procedural arguments, Estil asserted the Union granted him permission "to stand in [its] place and to pursue this matter at his own cost with his own attorney." Estil nonetheless acknowledged he was not a party to the CBA, and the CBA did not address whether the Union could delegate to a member its right to challenge an arbitration award. Further, Estil argued his application was timely made within the 120-day limitation set forth in N.J.S.A. 2A:23B-23, although he acknowledged his action was filed under N.J.S.A. 2A:24-8, which establishes a three-month deadline to confirm, vacate, or modify an award.[2] Estil also asserted the court could relax the time constraints under N.J.S.A. 2A:24-7 for good cause.

As to the merits, Estil advanced two grounds for vacating the award. Citing N.J.S.A. 2A:24-8(a), Estil claimed the award was reached by undue

---

[2] As we have explained, "New Jersey has three sets of arbitration laws: N.J.S.A. 2A:23A-1 to -19, N.J.S.A. 2A:23B-1 to -32, and N.J.S.A. 2A:24-1 to -11." Port Auth. of N.Y. and N.J. v. Port Auth. of N.Y. and N.J. Police Benevolent Ass'n, Inc., 459 N.J. Super. 278, 285 (App. Div. 2019). Relevant here, when the Legislature passed N.J.S.A. 2A:23B-1 to -32 in 2003, it "explicitly preserved N.J.S.A. 2A:24-1 to -11 as it applies to disputes arising from [CBA]s." Id. at 285-86.

means because the arbitrator impermissibly found gross negligence in the absence of a definition of that term under the CBA. Secondly, Estil claimed the arbitrator failed to "hear or consider the expert testimony of Mr. Sherlock" under N.J.S.A. 2A:24-8(c).

Following arguments, the trial judge reserved decision and thereafter issued a ten-page statement of reasons accompanying the August 27, 2020 order. The judge squarely addressed the issues raised in view of the applicable legal principles and the parties' CBA.

As a preliminary matter, the judge correctly recognized: "An individual employee is not deemed a formal party to a grievance arbitration provided for in a [CBA] that limits the power to invoke arbitration exclusively at the discretion of the union." Nonetheless, the trial judge was persuaded Estil was an "intended beneficiary" of the agreement and "clearly ha[d] an interest in this matter." Because Estil submitted documentation from the Union that "purport[ed] to convey authorization . . . to pursue an appeal," the judge concluded Estil presented a "colorable argument that he ha[d] acquired standing from the [U]nion."

However, the trial judge determined Estil's action was time-barred under the three-month time limitation set forth in N.J.S.A. 2A:24-7, which he

recognized "applies to all arbitrations arising from [CBA]s." As the judge noted, plaintiff's complaint "asserted violations of N.J.S.A. 2A:24-8(a) and (c)." Because the arbitration award was received by the Union on September 30, 2019, the judge therefore concluded Estil's January 28, 2020 complaint was filed nearly one month after the December 30, 2019 deadline.

Nonetheless, the trial judge also addressed the merits of Estil's application. Recognizing the judiciary's limited role in reviewing arbitration awards, the judge noted "labor arbitration awards can be overturned only in the narrowest of circumstances." The court may vacate an arbitration award only:

> (a) Where the award was procured by corruption, fraud[,] or undue means;
>
> (b) Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party; [or]
>
> (d) Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8].

A-0260-20

Analyzing the applicable subsections, (a) and (c), the trial judge found Estil failed to meet his burden. As to subsection (a), the judge surveyed Supreme Court precedent noting, for example: "'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 203 (2013) (alteration in original) (quoting Off. of Emp. Rels. v. Commc'n Workers of Am., 154 N.J. 98, 111-12 (1998)). Undue means does not however, "include situations . . . where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible." Loc. No. 153, Off. & Pro. Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 450 n.1 (1987).

The trial judge rejected Estil's assertion that, because "the CBA does not define gross negligence," the award was procured by undue means. Instead, the judge found NJT established the gross negligence standard through Sulpy, who testified about the industry standards and applicable point system, which assigned the maximum of sixteen points to the accident, thereby "necessitating" Estil's discharge. The judge explained: "Sulpy has handled over 1000 pedestrian crashes in his career. He testified that [Estil] should have been able

8

to see the pedestrian . . . in the crosswalk. The court finds no mistake of fact or law in the arbitrator's determination."

Referencing our Supreme Court's decision in Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013), the judge reasoned "undue means should be calibrated in light of that phrase's neighboring words 'fraud' and 'corruption.'" The trial judge found "nothing in the record concerning an error that [wa]s so gross as to suggest fraud or misconduct." Rather, Estil "dispute[d] the weight assigned to the evidence by the arbitrator" but clearly, "the arbitrator assigned greater weight and credibility to some evidence over other [evidence] in this matter." The judge elaborated:

> During the course of the arbitration proceeding, the panel was presented with and considered both physical and demonstrative evidence and live witness testimony of the incident. . . . There was a video camera that captured the incident and showed the pedestrian walking in the crosswalk with the right-of-way. The video also shows [Estil] making a sweeping left turn rather than a square . . . left turn. Evidence was presented that had [Estil] made a square . . . left turn the accident would not have happened. There was testimony that the type of left turn ma[de] by [Estil] was in violation of his training. [Estil] stated that the pedestrian was running across the street when he struck her. The video did not support his statement that the pedestrian was running. It showed the pedestrian walking.

> The accident reconstructionist Stephen Schoor's testimony included a video animation that depicted the accident from the perspective of [Estil]. Dale Sulpy testified and established relevant industry standards and training of bus operators that [were] considered by the arbitrator. Sulpy specifically testified that [Estil] failed to appropriately scan and failed to make a square turn as he was trained to do. . . .
>
> The arbitrator also considered the testimony of an eyewitness that was on the bus at the time of the accident. The police cited [Estil] for failure to yield. Although [he] did not testify, [his] conflicting statements . . . were introduced and considered by [the] arbitration panel. The evidence mentioned here is not exhaustive.

The judge therefore found the arbitrator reasonably rejected the Union's argument that Estil's "actions could not be found to be grossly negligent without some proof of fault on [his] behalf."

The trial judge also was not persuaded that the arbitrator refused to consider evidence under N.J.S.A. 2A:24-8(c). At issue was Sherlock's testimony that the pedestrian could have been in Estil's "blind spot" just prior to the accident. Noting Sherlock testified at the hearing, the judge found "clearly this [wa]s not the case where testimony was precluded." Moreover, the judge rejected Estil's contention that Sherlock's testimony was "uncontroverted" because NJT's expert, Schorr, "considered and rejected [Sherlock's] blind spot theory" during his testimony. Accordingly, the judge concluded the arbitration

panel considered and "determine[d] the credibility, value[,] and weight" of Sherlock's testimony.

On appeal, Estil reprises his argument that the arbitration award should be vacated pursuant to N.J.S.A. 2A:24-8 (a) and (c). Estil does not address the timeliness of his complaint, other than to assert in passing that good cause existed to extend the deadline and NJT was not prejudiced by his late filing.

Well-established principles guide our analysis. "Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ibid. (quoting Kearny PBA Loc. No. 21 v. Kearny, 81 N.J. 208, 221 (1979)).

As our Supreme Court has held: "Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, 'meant to be a substitute for and not a springboard for litigation.'" Barcon Assocs., Inc. v. Tri-Cnty. Asphalt Corp., 86 N.J. 179, 187 (1981) (quoting Korshalla v. Liberty Mut. Ins. Co., 154 N.J. Super. 235, 240 (Law Div. 1977)). With that goal in mind,

11

"[a]rbitration should spell litigation's conclusion, rather than its beginning." E. Rutherford PBA Loc. 275, 213 N.J. at 201 (quoting N.J. Tpk. Auth. v. Loc. 196, I.F.P.T.E., 190 N.J. 283, 292 (2007)).  Indeed, "[t]he public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court."  Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015).

In sum, arbitrators are granted broad powers to decide issues of fact and law, and their decisions "are given collateral estoppel effect by reviewing courts."  Barcon, 86 N.J. at 187.  As a result, "courts grant arbitration awards considerable deference."  E. Rutherford PBA Loc. 275, 213 N.J. at 201.  Because a trial court's decision to affirm or vacate an arbitration award is a decision of law, however, our review is de novo.  Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013).

Having considered Estil's contentions in view of the governing legal principles, we conclude they lack sufficient merit to warrant extended discussion in a written opinion.  R. 2:11-3(e)(1)(E).  Similar to the trial judge, we conclude Estil's complaint was untimely under N.J.S.A. 2A:24-7, and Estil failed to establish good cause that would otherwise excuse his late filing.  We additionally conclude, as did the trial judge, that the abundance of evidence before the tripartite panel refuted Estil's substantive claims under N.J.S.A.

2A:24-8 (a) and (c). Because we have concluded Estil's action was time-barred, we need not decide whether he had standing to file his Law Division action. However, because we have reached the merits of Estil's complaint, we add the following brief remarks.

Generally, union members lack standing to challenge a labor arbitration award where the parties to the CBA were the employer and the employee's union. Although New Jersey has a liberal approach to standing generally, Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009), N.J.S.A. 2A:24-7 clearly provides "[a] party to the arbitration may . . . commence an action" to vacate an award. (Emphasis added). Because only the Union and NJT were parties to the CBA in this case, only they could invoke binding arbitration in a discharge case, thereby becoming parties to the arbitration with the ability to ultimately challenge the resulting award.

Indeed, no Federal or New Jersey cases – cited or located in our research – extend standing to commence such an action to a union member except where there is an alleged breach of the duty of fair representation by the union. See e.g., Vosch v. Werner Cont'l, Inc., 734 F.2d 149, 154-55 (3d Cir. 1984). As noted in Vosch, a trial court's jurisdiction is proper where "the plaintiff alleged a violation of the duty of fair representation, or the [CBA] did not create a

13

grievance mechanism."  734 F.2d at 155 n.10.  Our Supreme Court has taken a similar approach.  See Saginario v. Attorney General, 87 N.J. 480, 501 n.1 (1981) (Clifford, J., concurring in part and dissenting in part).  No such claims were made in this case.

Further, we are not aware of any authority that empowers the Union to confer standing on an employee when the Union opts not to appeal an arbitration award under similar circumstances.  Nonetheless, because the Union, through counsel, expressly "authorize[d]" Estil "to pursue such an appeal of the decision" here, we discern no error in the trial judge's determination that Estil made a "colorable argument" that he "acquired standing from the [U]nion."  We hasten to add our decision is limited to the specific circumstances of this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0260-20