**Gary D. PAINTER and United Rubber, Cork, Linoleum and Plastic Workers of America AFL–CIO–CLC, Local 1023, Plaintiffs,**

v.

**MOHAWK RUBBER COMPANY, Defendant.**

**Civ. A. No. 84–0815.**

United States District Court, W.D. Virginia, Roanoke Division.

June 16, 1986.

P. Brent Brown, Martin, Hopkins, Lemon & Carter, Roanoke, Va., for plaintiffs.

Harley M. Kastner, Millisor, Belkin & Nobil, Akron, Ohio, William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

### I

This case comes before the court on defendant's motion for summary judgment. Both parties have been given the opportunity to brief and argue their respective positions to the court. Because there are no genuine issues of material fact, the matter is now ripe for disposition. For the numerous reasons stated below, the court concludes that defendant's motion must be granted.

### II

The key facts in this case are not in dispute. They are articulated with considerable detail in the arbitrator's opinion and need only be summarized here. The plain-

tiff, Gary Painter, was employed for seven (7) years as a Banbury Operator at the Salem, Virginia plant of the Mohawk Rubber Company. He was a member of the United Rubber Workers Union, Local 1023 during his employment. After working the midnight shift on February 17, 1983, plaintiff went to a nearby health spa to lift weights. When he soon experienced some pain in his neck and shoulders, plaintiff went to his chiropractor, Dr. Mowles. Dr. Mowles referred plaintiff to the emergency room at Roanoke Memorial Hospital where Dr. Ferry, the attending physician, diagnosed plaintiff as having "neck trauma" and advised him not to return to work until a later visit.

After several follow-up visits, Dr. Ferry pronounced plaintiff fit to return to work on March 20. Instead, plaintiff returned to see Dr. Mowles, who informed Mohawk that plaintiff could not "return to work until further notice."[1] As a result of this dispute, Mohawk and plaintiff mutually arranged for further treatment by Dr. James Urbaniak, a neurosurgeon at Duke University Medical Center. Dr. Urbaniak found no cervical spine abnormality, but recommended mild exercises and a follow-up visit in three (3) weeks. Plaintiff never returned for a later visit, Painter Dep. 94, but returned to see his chiropractor again. On April 11, 1983, Dr. Mowles once again wrote Mohawk, stating that plaintiff could not do physical work for a minimum of three to four weeks.

Plaintiff's insurance carrier then requested that plaintiff visit a third medical doctor, Dr. W.W. Stevens. Dr. Stevens apparently did not get along well with plaintiff during the examination. He issued a report on July 22, 1983, stating that plaintiff should "perhaps try and return to work." *See* Arbitration Decision at 6. Plaintiff disputed this conclusion and still maintained

that he could not do the lifting required at Mohawk.

To help resolve the dispute and in accordance with the collective bargaining agreement, Section F, 2(b), plaintiff's doctor and Mohawk's doctor agreed to appoint a neutral third doctor for an evaluation of plaintiff.[2] Dr. Platt, the appointed doctor, saw plaintiff on August 16, 1983. He instructed plaintiff to discontinue seeing Dr. Mowles and to engage in mild back exercises for three weeks. Instead, plaintiff again visited his chiropractor and then failed to return for a checkup with Dr. Platt. Plaintiff subsequently met with Dr. Platt on September 20 and was released to return to work. When plaintiff still persisted in his refusal to return to work, Mohawk terminated him on October 5.

Plaintiff and the Union grieved the termination and an arbitration hearing ensued pursuant to the collective bargaining agreement. Paul A. Fasser, Jr. heard the dispute and issued a decision on April 24, 1984 upholding plaintiff's discharge. Plaintiff and the Union then filed this action to overturn the arbitration award.

### III

The arbitrator's decision was rendered April 24, 1984. Plaintiff originally filed this action July 25, 1984, pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 (1976). In that complaint, he alleged that Arbitrator Fasser was "guilty of misconduct and manifest disregard of the law" and that his decision should therefore be reversed. Complaint, pp. 2–3. On March 1, 1985, approximately eleven months after the arbitration award, plaintiff amended his complaint to add the Union and state a new cause of action for breach of contract pursuant to § 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 185(a). The amended complaint stated that "Mohawk discharged Painter without

---

1. According to the testimony, plaintiff's position required rather strenuous physical activity. A Banbury Operator frequently must lift between seventy-five and eighty pounds. *See* Arbitration Decision, p. 5 at n. 1.

2. Because Dr. Stevens refused to participate in the selection of a neutral third doctor, Nurse Debbie Blake (the Mohawk Company nurse) negotiated with Dr. Mowles in the selection of Dr. Pratt.

just cause in violation of the collective bargaining agreement." Amended Complaint, p. 3. The Supreme Court has definitively stated that a six month statute of limitations applies to suits brought under § 301. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Therefore, unless the later complaint "relates back" to the original complaint pursuant to Rule 15(c), it is time-barred under *DelCostello.*

Summary judgment must be granted in this case because plaintiff's amended complaint cannot relate back. An amended complaint that arises out of the same "conduct, transaction, or occurrence" set forth in the original complaint will relate back to the date the original pleading was filed. Fed.R.Civ.P. 15(c). In this case, however, plaintiff's original and amended complaints are based on entirely different theories, facts and occurrences. This case is virtually identical to a recent Fifth Circuit case. In *Holmes v. Greyhound Lines, Inc.,* 757 F.2d 1563 (5th Cir.1985), an employee grieved his termination and lost at arbitration in a February 9, 1983 decision. He filed an action to vacate the arbitrator's award on June 9. On December 9, the employee amended his complaint to allege a cause of action under § 301. The amended complaint alleged that Greyhound had wrongfully discharged him and that the Union had breached its duty of fair representation. The Fifth Circuit held that the *DelCostello* six month statute of limitations applied and that the amended complaint did not "relate back." *Id.* at 1566. Whereas the original complaint alleged bias by the arbitrator, the amended complaint alleged bad faith by the Union and a breach of contract by the employer. Therefore, the amended complaint was based "on entirely different facts, transactions, and occurrences." *Id.*

*Holmes* is extremely similar to this case. Here, the plaintiff filed an action to set aside an April, 1984 arbitration award in July, 1984. Eight months later, he filed an amended complaint under § 301, alleging breach of contract by his employer in the termination. This is an entirely different legal theory and involves a different factual setting as well. Therefore, it cannot relate back under Rule 15(c) and is time-barred by the six month statute of limitation enunciated in *DelCostello.*

## IV

■ Assuming, *arguendo,* that plaintiff's amended complaint relates back, it does not state a cause of action upon which this court can grant relief. Individual employees cannot appeal adverse arbitral decisions in federal court under § 301 unless the Union has breached its duty of fair representation to the employee. *McNair v. United States Postal Service,* 768 F.2d 730 (5th Cir.1985); *Vosch v. Werner Continental, Inc.,* 734 F.2d 149 (3d Cir.1984). In this case, Mr. Painter insists that he was fairly represented by his Union. *See* Painter Dep. at 134–35. Therefore, his claim under § 301 fails in any event.

## V

■ Even were this court to look at the merits of the amended complaint, summary judgment would still be appropriate. Federal court review of labor arbitration awards is highly deferential. Unless the arbitral decision does not "draw its essence from the collective bargaining agreement," a court must enforce it without reviewing the merits. *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Even though a court might "conceivably ... reach a different result" if it interpreted the contract itself, the award still cannot be set aside if it "draws its essence" from the labor contract. *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 765–66, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).

It cannot be seriously contended that Arbitrator Paul Fasser's decision did not "draw its essence" from the collective bargaining agreement. He is a neutral arbitrator for whom the parties have bargained. He listened carefully to the evidence and made a reasonable decision based on his interpretation of the contract.

This court need inquire no further. *See Clinchfield Coal v. U.M.W.*, 720 F.2d 1365 (4th Cir.1983). Unhappy participants in arbitration proceedings should not scamper to federal court every time they wish to see a ruling overturned. On the contrary, public policy requires that decisions by neutral arbitrators be rarely reversed by federal courts. Summary judgment must therefore be granted.

## VI

Although this case is clearly not a meritorious one for the plaintiff, the court does not believe it has been interposed to "harass or cause unnecessary delay." *See* Fed.R.Civ.P. 11. Therefore, sanctions and attorney's fees are not entirely appropriate in this case.

Defendant's motion for summary judgment shall be granted in an order entered this date.

Defendant's motion for costs and attorney's fees shall be denied in an order entered this date.

### ORDER