Julian W. TREVATHAN, Plaintiff,

v.

**NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY,**
Defendant.

Civ. A. No. 90–333–N.

United States District Court,
E.D. Virginia,
Newport News Division.

Nov. 30, 1990.

Magistrate's Report and
Recommendation, Oct. 22, 1990.

Charles S. Montagna, for plaintiff.

William C. Bell, for defendant.

## ORDER

KELLAM, District Judge.

By order of September 25, 1990, and pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), the motions for summary judgment filed by each of the parties were referred to The Honorable William T. Prince, United States Magistrate, to conduct such hearings as were necessary and submit to this Court proposed findings of fact and recommendations for disposition by a judge of this Court. Such report and recommendations were filed by Judge Prince on October 22, 1990, with direction to the Clerk to mail a copy thereof to counsel for the parties and notifying them that they might file objections to the report and recommendations. Further, they were notified that a District Judge would make a *de novo* determination of those portions of the report or recommendations to which objections were made. Plaintiff duly filed objections to the (1) finding by Judge Prince that plaintiff lacked standing to maintain this action, and (2) that the arbitrator's award draws its essence from the existing Collective Bargaining Agreement. In such objection, plaintiff says that he "realleges and incorporates herein plaintiff's brief in opposition to defendant's motion for summary judgment and plaintiff's own motion for summary judgment and brief in support thereof." (Par. 2, page 1 of objections filed October 31, 1990)

The record establishes and neither party challenges the finding that the grievance procedure provided by the Collective Bargaining Agreement was followed, and that the matter was thereafter submitted to arbitration. A copy of the opinion and award of the arbitrator, along with copy of the Collective Bargaining Agreement are attached to plaintiff's complaint filed herein on June 15, 1990.

The complaint alleges that plaintiff was an employee of defendant and had been for some approximately 22 years; that plaintiff's work was governed by the Collective Bargaining Agreement; that plaintiff, along with others in the same type of employment, was required to take an annual requalification test; that on or about October 20, 1988, plaintiff took such test; that plaintiff, following such test, was terminated from his employment for cheating on the test by having with him a flow chart containing pertinent guidelines and procedures; that following a hearing of evidence from each side, the arbitrator found that the examination was a closed book exam and that plaintiff was guilty of cheating; that defendant company's regulations provide that defendant may discharge an employee for "falsification of company records," and that plaintiff's conduct constituted falsification of company records. The arbitrator found that the discharge of plaintiff by defendant was in accord with the Collective Bargaining Agreement and for good cause.

In his complaint filed herein, plaintiff moves the Court to enter a judgment declaring that the award of the arbitrator is invalid and the Court should set the award aside, declare that plaintiff's termination was without just cause and in violation of the aforesaid agreement, and that the Court award plaintiff damages for his loss of earnings.

Plaintiff has not here, nor has he at any stage of the proceedings, contended that the question of his discharge was not covered by the Collective Bargaining Agreement, or that the matter was improperly referred to arbitration. In fact, he asserts that such action was proper. In his complaint, plaintiff says that the arbitrator's award failed to properly interpret the said agreement, misapplied the defendant's rule, and therefore the decision did not take its essence from said agreement.

Defendant answered and also filed a motion for summary judgment. In said motion, defendant asserted plaintiff lacked standing to maintain this action because he was not a party to the aforesaid agree-

ment; that the complaint is insufficient because of a failure to allege fraud, deceit or that the union breached its duty of fair representation and thereby subverted the arbital process; and that defendant is entitled to summary judgment because the arbiter's award draws its essence from the agreement.

Plaintiff likewise filed a motion for summary judgment. Therein, plaintiff says the parties agree that plaintiff was subject to discharge by defendant for just cause, and the agreement permitted such discharge for violating company rules. However, plaintiff there asserts the arbitrator failed to read the rules "in *its* usual sense," but stretched the terms of the rules beyond their clear meaning thereby exceeding the scope of his authority.

The facts as found by the arbitrator, the procedural background, the contentions of the parties, the issues and applicable law are all clearly set forth in Judge Prince's report and recommendation. Upon a complete *de novo* review, the Court adopts the report and recommendation as its own.

In accord with the report and recommendation, the defendant's motion for summary judgment is treated as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and this action is dismissed for plaintiff's lack of standing to maintain it, upon the grounds and applicable law set out in the report.

But even if plaintiff had standing to maintain this action, he would not be entitled to the relief prayed for. He seeks to have the Court substitute its judgment for that of the arbitrator. The Arbitration Act, 9 U.S.C. § 10, provides the only basis for the Court to make an order vacating the award "upon the application of either party to the arbitration." The "federal Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award ..." *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1211 (6th Cir. 1982). As the report makes clear, the Supreme Court is United Paperworkers International Union, *AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), again pointed out that the Courts

exercise limited review of arbitrators' decisions and findings. It there restated that Courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract, and that such is the proper approach to arbitration under collective bargaining agreements. Courts do not sit to hear claims of factual or legal errors by an arbitrator as do appellate courts of a lower court's decisions, nor should a Court reject an award on the ground that the arbitrator misread the contract and even where the Court is concerned the arbitrator committed serious error, such does not suffice to overturn the arbitrator's decision. *See Misco*, 108 S.Ct. at 370, 371. All of this is fully set forth in the report. Since it is clear, as the report sets forth, that the arbitrator's decision and findings draw their essence from the relevant collective bargaining agreement covering plaintiff, defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED. This action is therefore DISMISSED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate.

### *Order of Designation*

United States District Judge John A. MacKenzie, by an order entered on September 25, 1990, designated the undersigned magistrate to conduct a hearing and to submit to a judge of the court proposed recommendations for disposition by the judge of defendants' Motion for Summary Judgment filed on August 20, 1990 and also of plaintiff's Motion for Summary Judgment filed on September 5, 1990.

A hearing was held on September 27, 1990 at which Charles S. Montagna, Esquire, appeared for plaintiff, Julian W. Trevathan, while William C. Bell, Esquire, appeared for defendant, Newport News Shipbuilding and Dry Dock Company.

## NATURE OF THE CASE

### Alleged Factual Background

Plaintiff Trevathan was an employee of the defendant, Newport News Shipbuilding and Dry Dock Company [hereinafter "Newport News"] for approximately twenty-two (22) years. As a Newport News employee, Trevathan was covered by a collective bargaining agreement existing and in force between the defendant and the United Steelworkers of America [hereinafter "United Steelworkers"].

On October 20, 1988, Newport News required Trevathan to take an acid spot test to identify various metals. Each employee who wishes to qualify as an inspector in the 053 Department must take an initial qualification test and then pass annual requalification tests. During his October 20, 1988 requalification examination, Trevathan allegedly cheated by having with him a flow chart containing pertinent guidelines and procedures.[1] As a result, defendant terminated plaintiff's employment. As its basis for discharge, defendant cited plant regulation 10 which states that Newport News may discharge an employee for "[f]alsification of Company records."[2]

Thereafter, United Steelworkers, the union representing Trevathan in his employment, filed a grievance pursuant to the collective bargaining agreement on plaintiff's behalf against Newport News protesting Trevathan's discharge. The disputed discharge proceeded through the various steps required by the grievance procedures existing under the collective bargaining agreement.[3] Next, after exhausting the grievance procedures, Newport News and United Steelworkers submitted the matter to arbitration pursuant to the collective bargaining agreement. See Agreement between Newport News Shipbuilding and Dry Dock Company and the United Steelworkers of America, June 1, 1987 through March 31, 1991, Art. 12, sec. 1 [hereinafter "Agreement"]. Arbitrator James M. Litton conducted the arbitration and issued his decision on March 29, 1990. Under the terms of the collective bargaining agreement, "the arbitrator's award and decision ... shall be final and binding upon the parties and employee(s) concerned." Id. at sec. 4.

At the arbitration proceeding, plaintiff and United Steelworkers contended that Newport News' termination of Trevathan's employment was without just cause and should therefore be set aside. Defendant argued that plaintiff's alleged cheating constituted falsification of a company document as prohibited by the Plant Regulations and thereby created just cause for termination. The arbitrator ruled that defendant's discharge of plaintiff was for just cause, specifically for falsifying a company document in violation of Yard Rule 10.

### Procedural Background

Following the arbitrator's written decision and findings of March 29, 1990, Trevathan filed a complaint in this Court on June 15, 1990 against Newport News under 29 U.S.C. § 185.[4] In his complaint, plaintiff asks the Court to invalidate the arbitrator's award, declare that defendant's discharge of plaintiff was without just cause and in violation of the collective bargaining agreement, and award damages for plaintiff's loss of earnings.

On August 20, 1990, defendant filed a Motion for Summary Judgment under Rule

---

1. Both parties offered testimony during arbitration disputing whether the examination was closed book; and, the arbitrator concluded that the test was indeed closed book.

2. These plant regulations list thirty-five (35) "acts and practices, singularly or collectively, [that] are expressly prohibited and will subject the offending employee to discharge or other discipline." Newport News Shipbuilding Plant Regulations, CR–101–3 [hereinafter "Plant Regulations" or "Yard Rules"]. Presumably, each employee receives a copy of the pamphlet containing these plant regulations. Plaintiff does not suggest that he failed to receive this pamphlet or that he was unaware of the Yard Rules.

3. Neither plaintiff nor defendant contest that the proper grievance procedures were utilized.

4. Labor Management Relations Act, 1947, § 301, 61 Stat. 156, 29 U.S.C. § 185.

56(b) of the Federal Rules of Civil Procedure. Similarly, plaintiff filed a Motion for Summary Judgment under Rule 56(a) on September 5, 1990.[5]

### DISCUSSION

#### Motion for Summary Judgment

For purposes of defendant's Motion for Summary Judgment, the Court takes as true all facts and material allegations of the plaintiff and construes them in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Defendant raises two grounds in support of its Motion for Summary Judgment. First, Newport News claims that plaintiff lacks standing to maintain this suit because he was not a party to the arbitration nor the collective bargaining agreement. In addition, defendant argues that plaintiff has no standing because he fails to allege that United Steelworkers breached its duty of fair representation or that fraud or deceit produced the arbitrator's award. Second, assuming arguendo that plaintiff has standing, defendant maintains the arbitrator's decision and findings draw their essence from the collective bargaining agreement in effect between Newport News and United Steelworkers. In other words, having interpreted the agreement and not having applied his own notions of justice, the arbitrator's decision is binding and final. Therefore, defendant argues that plaintiff's claim is without merit and that defendant's Motion for Summary Judgment should be granted.

### I.

A. *Whether plaintiff Trevathan has standing to pursue this cause of action as a party to the collective bargaining agreement?*

First, Newport News contends that plaintiff Trevathan clearly is not a party to the collective bargaining agreement. Defendant points out that the collective bargaining agreement specifically provides that the parties to the agreement are defendant and United Steelworkers. *See Agreement,* Art. 1. In addition, defendant maintains that the agreement exclusively prescribes that the employee's union representative, Local 8888, is the appropriate party to present any grievances on behalf of the covered employees as opposed to the individual employees themselves. *Id.* at Art. 11. Finally, defendant contends that only United Steelworkers, plaintiff's union, can initiate and appeal arbitration proceedings. *Id.* at Art. 12–13.

Plaintiff argues that § 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185(a), provides a jurisdictional basis for individual suits brought by employees. Citing several cases, Trevathan contends that an individual employee *or* his union may bring such suits under 29 U.S.C. § 185 to protect the employee's individual rights.[6] Plaintiff further maintains that he has standing to enforce the collective bargaining agreement made between Newport News and United Steelworkers because the agreement embodies rights intended for his benefit as an employee and beneficiary of the collective bargaining agreement. Finally, citing an A.L.R. annotation, Trevathan argues that an individual employee may enforce provisions in the collective bargaining

---

**5.** Plaintiff's argument in his Motion for Summary Judgment is essentially the same as his argument in opposition to defendant's Motion for Summary Judgment. Accordingly, the Court will simply address plaintiff's argument in general and not distinguish between the two for purposes of this Report and Recommendation.

**6.** *See Amalgamated Ass'n v. Lockridge*, 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Ass'n*, 371 U.S.

195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Fox v. Mitchell Transport, Inc.*, 506 F.Supp. 1346, 1349 (D.Md.), *aff'd*, 671 F.2d 498 (4th Cir.1981); *Tolbert v. Union Carbide*, 495 F.2d 719, 721 (4th Cir.1974); *Local 13, Int'l Longshoremen's and Warehousemen's Union v. Pacific Maritime Ass'n*, 441 F.2d 1061, 1065 (9th Cir.1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972); *Lee v. Olin Mathieson Chem. Corp.*, 271 F.Supp. 635, 638 (W.D.Va.1967).

agreement which limit defendant's ability to discharge an employee.[7]

Section 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185, authorizes employers, and labor organizations, parties to a collective bargaining agreement, to bring an action in federal district court to enforce or remedy provisions of the agreement. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 577, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451–59, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Textile Workers Union of America v. Cone Mills Corp.,* 268 F.2d 920, 923 (4th Cir.), *cert. denied,* 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959). Specifically, 29 U.S.C. § 185 provides that:

> (a) Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

When interpreting the "between an employer and a labor organization" clause of 29 U.S.C. § 185, the Supreme Court has consistently adopted a broad view of § 301 jurisdiction.[8] For example, the Supreme Court in *Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), held that individual employees may bring suits against their employers for alleged breaches of the collective bargaining agreement under § 301.[9] However, as Justice Black noted in his dissent, "the Court studiously refrains from saying, when, for what kinds of breach, or under what circumstances an individual employee can bring a § 301 action and when he must step aside for the union to prosecute his claim." *Id.* at 203, 83 S.Ct. at 271 (Black, J., dissenting).

■ Clearly, an individual employee may bring an action in federal court where the union has allegedly breached its duty of fair representation to the employee.[10] *See*

---

**7.** *See* Annotation, *Right of Individual Employee to Enforce Collective Labor Agreement Against Employer,* 18 A.L.R.2d 352 (1951). Defendant contends that this annotation concerns cases which occurred before the *Steelworkers* trilogy. In *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564 (1960), *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), better known as the *Steelworkers* trilogy, the U.S. Supreme Court recognized the special role of arbitration in labor-management disputes. In these three cases, the Supreme Court noted that "the best method for resolving grievances between employers and employees represented by a union is the procedure to which the parties themselves have agreed." *Vosch v. Werner Continental, Inc.,* 734 F.2d 149, 154 (3d Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985) (citing *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960)). Moreover, the Supreme Court concluded that the federal judiciary should limit its review to simply determine if the arbitrator's decision draws its essence from the collective bargaining agreement. The Court addresses the gist of plaintiff's argument under the A.L.R. citation in its discussion above.

**8.** *See, e.g., Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 865 n. 7, 107 S.Ct. 2161, 2170 n. 7, 95 L.Ed.2d 791 (1987); *Franchise Tax Bd. v. Laborers Vacations Trust,* 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983); *Amalgamated Ass'n v. Lockridge,* 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Ass'n,* 371 U.S. 195, 199–200, 83 S.Ct. 267, 269–70, 9 L.Ed.2d 246 (1962); *Retail Clerks International Ass'n Locals 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 25–29, 82 S.Ct. 541, 546–49, 7 L.Ed.2d 503 (1962), *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451–59, 77 S.Ct. 912, 915–19, 1 L.Ed.2d 972 (1957).

**9.** *Accord Tolbert v. Union Carbide Corp.,* 495 F.2d 719, 721 (4th Cir.1974); *Brown v. United Parcel Service, Inc.,* 560 F.Supp. 146, 148 (E.D. Va.1982); *Safely v. Time Freight, Inc.,* 307 F.Supp. 319, 322 (W.D.Va.1969), *aff'd,* 424 F.2d 1367 (4th Cir.1970); *see also Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 425, 101 S.Ct. 1836, 1849, 68 L.Ed.2d 248 (1981) (Burger, J., dissenting) (noting that *Smith* stands for the proposition that "[a]n employee may sue the employer directly for breach of the [collective bargaining] agreement even though the employee is not technically a party to the agreement").

**10.** A union breaches its duty of fair representation of an individual employee when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory" manner. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).

*Hines v. Anchor Motor Freight*, 424 U.S. 554, 572, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Smith v. Local 7898, United Steelworkers of America*, 834 F.2d 93, 96 (4th Cir.1987); *Ash v. United Parcel Service, Inc.*, 800 F.2d 409, 411 (4th Cir.1986) (per curiam). In addition, the Supreme Court has noted that "§ 301 suits [may] encompass those [claims] seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Hines*, 424 U.S. at 562, 96 S.Ct. at 1055 (quoting *Smith v. Evening News Ass'n*, 371 U.S. 195, 198–200, 83 S.Ct. 267, 269–70, 9 L.Ed.2d 246 (1962)).

■ The question arises as to what constitutes a "uniquely personal" right. As the Supreme Court noted in *Smith v. Evening News Ass'n*, wrongful discharge represents a typical example of a uniquely personal right. *Smith*, 371 U.S. at 199, 83 S.Ct. at 269. However, a Virginia federal court has held that an individual employee cannot appeal an arbitrator's award under § 301 even where the individual employee was ultimately discharged. *Painter v. Mohawk Rubber Co.*, 636 F.Supp. 453, 456 (W.D.Va.1986) (citing *McNair v. United States Postal Services*, 768 F.2d 730 (5th Cir.1985) and *Vosch v. Werner Continental, Inc.*, 734 F.2d 149 (3d Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985)). The *Painter* court noted that the only exception to this rule occurs when the employee's union breaches its duty of fair representation to the employee during the grievance or arbitration process. *Id.* This exception effectively recognizes the judicial deference to the finality of arbitrator's decisions that is mandated by the *Steelworkers* Trilogy. *See supra* note 7. In other words, plaintiff Trevathan has standing to maintain an *independent* action for wrongful discharge against Newport News; however, Trevathan does not have standing to *appeal* the arbitrator's decision and findings of March 29, 1990 unless he shows that the union breached its duty of fair representation.

After all, the individual employee is not a party to the arbitration proceedings.

Plaintiff's cause of action does not clearly state whether he is pursuing an independent action for wrongful discharge or rather simply seeking to vacate the arbitrator's decision. Trevathan's complaint specifies that "[p]laintiff seeks judgment from the defendant for his lost wages and reduced earnings incurred on account of his termination in breach of the Collective Bargaining Agreement." Plaintiff's Complaint Paragraph 12, June 15, 1990. However, in his oral presentation and memorandum opposing this motion, plaintiff essentially alleges that the arbitrator's decision exceeded the authority granted to him by the collective bargaining agreement. This position effectively fails to assert any independent breach of contract action. On the other hand, plaintiff contends that Trevathan has standing as a beneficiary to the collective bargaining agreement between his employer and his union, that Newport News allegedly breached. As *Painter* noted, these claims—vacating an arbitrator's award versus seeking an independent action—represent distinctly different legal theories that require different factual allegations. *Painter*, 636 F.Supp. at 456. Defendant characterizes plaintiff's cause of action as a duty of fair representation claim against the union. Similarly, in *Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler*, the Supreme Court noted:

Although employees usually bring duty-of-fair representation claims against their union rather than § 301 claims, *see, e.g., Vaca v. Sipes, supra*, third party beneficiaries to a contract ordinarily have the right to bring a claim based on the contract. The Union has not contested respondent's right to bring a § 301 claim against it based on her status as a third-party beneficiary to the collective bargaining agreement, although it has attempted to recast her suit as a duty-of-fair-representation claim.

481 U.S. 851, 865 n. 7, 107 S.Ct. 2161, 2170 n. 7, 95 L.Ed.2d 791 (1987).

In discerning whether to treat this cause of action as simply an appeal of the arbitra-

tor's decision or instead as an independent action, Judge Clarke of this Court has instructed that "[t]he Federal Courts have clearly held that if an 'arbitration award' has been reached a § 301 suit is more closely analogized to a suit to vacate an arbitration than to an ordinary contract action." *Brown v. United Parcel Service, Inc.,* 560 F.Supp. 146, 149 (E.D.Va.1982) (quoting *Ross v. Bethlehem Steel Corp.,* 109 L.R.R.M. 2791 (D.Md.1981)).[11] In addition, a claim to vacate an arbitrator's award typically "involves no new 'issues not already presented and contested in the arbitration proceeding itself.'" *Local Union 8181, U.M.W.A. v. Westmoreland Coal Co.,* 649 F.Supp. 603, 607 (W.D.Va.1986) (quoting *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983)).

In the present action, the arbitrator clearly reached a decision on the merits of defendant's alleged wrongful discharge of Trevathan. Additionally, plaintiff's claim does not involve any issue different from those presented and resolved during the arbitration process. Finally, whatever plaintiff intends, if he prevails, his cause of action will have the direct effect of vacating the arbitrator's award. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981). Therefore, the Court finds that

plaintiff's cause of action is essentially a suit to vacate the arbitrator's award and not an independent action under § 301. As a result, plaintiff, as an individual employee, may not appeal the adverse determination of the arbitrator under § 301 unless his union breached its duty of fair representation to him during the grievance or arbitration proceedings. *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91.[12] Since plaintiff fails to allege any breach of the duty of fair representation by United Steelworkers in the grievance or arbitration proceedings, Trevathan has no standing to maintain this action.[13]

B. *Whether plaintiff must allege that his union, United Steelworkers breached its duty of fair representation in order to maintain this action?*

In order for plaintiff to establish standing as an individual employee, defendant argues that he must specifically allege that United Steelworkers breached its duty of fair representation. Relying on *Ash v. United Parcel Service, Inc.*[14] and *Smith v. Local 7898, United Steelworkers of America*[15], Newport News contends that a mistake in judgment by the union does not show a breach of fair representation. Instead, defendant contends that the union's conduct must rise to a level of gross negli-

---

11. See also *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Sine v. Local No. 992, Int'l Bhd. of Teamsters,* 644 F.2d 997 (4th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981); *Local Union 8181, U.M.W.A. v. Westmoreland Coal Co.,* 649 F.Supp. 603, 606 (W.D.Va.1986) (citing *Brown v. United Parcel Service, Inc.,* 560 F.Supp. 146 (E.D.Va.) and *Ross v. Bethlehem Steel Corp.,* 109 L.R.R.M. 2791 (D.Md.1981) with approval).

12. See also *Martin v. Youngstown Sheet & Tube Co.,* 911 F.2d 1239, 1244 (7th Cir.1990); *Bacashihua v. United States Postal Service,* 859 F.2d 402, 405 (6th Cir.1988); *Anderson v. Norfolk & Western Ry. Co.,* 773 F.2d 880, 882 (7th Cir.1985); *McNair v. United States Postal Service,* 768 F.2d 730, 735 (5th Cir.1985); *Vosch v. Werner Continental, Inc.,* 734 F.2d 149, 154–55 (3d Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985); *Andrus v. Convoy Co.,* 480 F.2d 604, 606 (9th Cir.), *cert. denied,* 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973); *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d

167, 171 (5th Cir.1971); *Acuff v. United Papermakers and Paperworkers, AFL–CIO,* 404 F.2d 169, 171 n. 2 (5th Cir.1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969); *Painter v. Mohwak Rubber Co.,* 636 F.Supp. 453, 456 (W.D.Va.1986). Plaintiff has cited no authority to the contrary allowing an individual employee to appeal an adverse arbitrator's determination.

13. Similarly, in *Vosch,* the individual employees did "not challenge the fairness or adequacy of his union's representation in the arbitration process, nor [did] they impugn the integrity of the arbitration process." *Vosch,* 734 F.2d at 154. Instead, plaintiffs simply were "disappointed grievants." *Id.* Therefore, the Court held that the individual employees had no standing to appeal the arbitrator's decision.

14. 800 F.2d 409, 411 (4th Cir.1986) (per curiam).

15. 834 F.2d 93, 96 (4th Cir.1987).

gence in order to establish a breach of the union's duty to a covered employee. As defendant states, "[t]he mere fact that the arbiter found Newport News' case witnesses and evidence more persuasive does not amount to negligence, fraud or deceit." Defendant's Memorandum in Support of Motion for Summary Judgment at 8. Given defendant's contention that no factual basis exists regarding a breach of duty by United Steelworkers, defendant also notes that plaintiff fails to allege that United Steelworkers breached its duty of fair representation of him in the grievance and/or arbitration proceedings.

Plaintiff argues that *Ash* and *Smith* are inapplicable to the facts of this case. He contends that they are cases where an individual employee sued his employer *and* union. Both cases included specific allegations against the respective union for breach of its duty of fair representation. Logically, plaintiff maintains that the individual employee would have to allege and prove breach of duty of fair representation by the union in order to proceed against the union. However, plaintiff claims that the present case concerns much different factual allegations, i.e., a suit by an individual employee against his employer to enforce the terms of a collective bargaining agreement. In this factual scenario, plaintiff argues that an individual employee is not required to allege a breach by the union of its duty of fair representation in the grievance or arbitration proceedings.

■ Plaintiff must allege that United Steelworkers breached its duty of fair representation to him in order to maintain an *appeal* of the arbitrator's adverse ruling. *See McNair v. United States Postal Services,* 768 F.2d 730 (5th Cir.1985); *Vosch v. Werner Continental, Inc,* 734 F.2d 149 (3d Cir.1984), *cert. denied,* 469 U.S. 1108, 105

S.Ct. 784, 83 L.Ed.2d 779 (1985); *Painter v. Mohawk Rubber Co.,* 636 F.Supp. 453, 456 (W.D.Va.1986). Failing in that, he has no standing in this action.[16]

C. *Whether plaintiff established standing to set aside the arbitrator's decision by sufficiently pleading the presence of fraud or deceit in the arbitration proceeding?*

■ Defendant notes that the existence of fraud or deceit may serve as grounds to set aside an arbitrator's decision and findings. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). However, defendant argues that plaintiff fails to allege that the results of the arbitration proceeding were obtained by means of fraud or deceit. Plaintiff makes no mention, in his memorandum or at oral argument, that fraud or deceit justify overturning the arbitrator's decision. Therefore, the Court finds further evidence that plaintiff lacks standing to maintain this action because Trevathan fails to allege fraud or deceit during the arbitration proceeding.

Having determined that plaintiff Trevathan lacks standing to maintain this action, the Court notes a procedural clarification regarding its ruling. The appropriate motion to address plaintiff's lack of standing to sue is a Motion to Dismiss and not a Motion for Summary Judgment. *See McNair v. United States Postal Service,* 768 F.2d 730, 737 (5th Cir.1985). Therefore, in regards to the standing issue, the Court treats defendant's Motion for Summary Judgment as a Motion to Dismiss and recommends dismissal of plaintiff's cause of action accordingly.

II.

Defendant argues that the U.S. Supreme Court clearly articulated in *United Paper-*

---

**16.** If Trevathan chose to pursue an independent action against Newport News, plaintiff may maintain such action without the necessity of alleging a breach of the union's duty of fair representation. *But see Brown v. United Parcel Service, Inc., supra* (noting that once an arbitrator's award has been reached, the court should consider the individual employee's action as one simply to vacate the arbitrator's award and not as an independent action). Nonetheless, should

plaintiff seek to amend his complaint in this action to convert his allegations into an independent claim against the employer for breach of contract, Trevathan must meet the applicable statute of limitations. *See Painter,* 636 F.Supp. at 456 (noting that an appeal of an arbitration award and an independent § 301 action are two different actions and that the relevant statute of limitations for an independent § 301 action is six months).

workers Int'l Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 37, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987), that courts should only exercise limited review of arbitrator's decisions and findings. Citing two Supreme Court decisions,[17] Newport News maintains that arbitration serves as the "congressionally preferred means of resolving employee grievances" and precludes an individual employee from seeking judicial relief unless the Union breaches its duty of fair representation. Defendant's Memorandum in Support of Motion for Summary Judgment at 9. Next, quoting Misco, defendant contends that:

> the courts play only a limited role when asked to review the decision of an arbiter. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of facts or on misinterpretation of the contract. The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

Misco, 484 U.S. at 36, 108 S.Ct. at 370. In other words, defendant claims that an arbitrator's decision and findings must only come from the "essence" of the collective bargaining agreement. Defendant further

argues that a reviewing court should not overturn an arbitrator's interpretation and application of the collective bargaining agreement unless such interpretation is contrary to the plain meaning or is not an arguable interpretation of the agreement.[18]

Given a proper utilization of the grievance and arbitration proceedings as specified in the collective bargaining agreement,[19] defendant argues that the arbitrator simply interpreted the agreement. The arbitrator found that Trevathan had on his possession an unauthorized flow chart during the requalification test. The arbitrator further determined that Trevathan cheated on the examination. Finally, the arbitrator concluded that cheating on the requalification test constituted "falsification of Company records" in violation of Plant Regulation 10; and, therefore, ruled that Newport News discharged Trevathan for just cause. Defendant maintains that the arbitrator's "consideration and interpretation of the Collective Bargaining Agreement and the plant rule is clearly an interpretation of that agreement." Defendant's Memorandum in Support of Motion for Summary Judgment at 11–12. Thus, Newport News concludes that the arbitrator's decision and findings draw their essence from the terms of the collective bargaining agreement and should not be set aside.

On the other hand, plaintiff argues that the arbitrator exceeded his authority in

---

**17.** See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); Vaca v. Sipes, 386 U.S. 171, 184–86, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967).

**18.** Defendant quotes further from Misco in arguing that courts:

> thus do not sit to hear claims of factual or legal error by an arbitrator as an Appellate Court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject the award on the ground that the arbitrator misread the contract. (citation omitted).

Misco, 484 U.S. at 38, 108 S.Ct. at 371.

Defendant also notes Franklin Elec. Co. v. Int'l Union, UAW, 886 F.2d 188 (8th Cir.1989), and Holcomb v. Colony Bay Coal Co., 852 F.2d 792 (4th Cir.1988), for the proposition that "even where a court is convinced an arbitrator committed serious error, as long as the arbitrator arguably construed or applied the contract, the court is without authority to vacate that award." Defendant's Memorandum in Support of Motion for Summary Judgment at 10.

**19.** Plaintiff and defendant agree that the collective bargaining agreement includes the Yard Rules, and that violations of yard rules subject an employee to disciplinary measures. Plaintiff Trevathan does not challenge the initiation or application of the grievance and arbitration process. Instead, plaintiff argues that the arbitrator's interpretation of the collective bargaining agreement exceeds his authority.

making his ruling. Citing *Proctor and Gamble Mfg. Co. v. Independent Oil and Chemical Workers*, 386 F.Supp. 213 (D.Md. 1974), he contends that the Court should set aside an arbitrator's decision and findings where the arbitrator exceeds the authority granted to him. Plaintiff maintains that the plain meaning of Yard Rule 10 is unambiguous and does not include cheating on a requalification test.[20] Therefore, Trevathan concludes that:

> the arbitrator exceeded his authority under the contract, [when] he essentially rewrote yard rule 10 to include conduct which the arbitrator apparently felt was so reprehensible that it required discharge. Yet the arbitrator does not sit to dispense his own brand of industrial justice, rather he sits to apply the agreed terms of the Collective Bargaining Agreement.

Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 5. Therefore, plaintiff argues that the Court should set aside the arbitrator's decision and findings because the arbitrator's award exceeds the authority granted to him by the collective bargaining agreement.

 An arbitrator draws his authority to resolve disputes from the collective bargaining agreement between an employer and the union. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597–98, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960). The Court will not disturb an arbitrator's award unless the arbitrator exceeded the authority granted to him by the collective bargaining agreement. *See Misco*, 484 U.S. at 36–38, 108 S.Ct. at 370–71. In addition, the Court's inquiry is limited to whether the arbitrator's determination and findings draw their essence from the collective bargaining agreement. *Id.*[21] As the Supreme Court noted in *Enterprise Wheel*, "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. In other words, the arbitrator has the right to be wrong in his evaluation and determination of the employee's grievance.

In the collective bargaining agreement between Newport News and United Steelworkers covering plaintiff Trevathan, the agreement provides that the arbitrator "shall regard the provisions of this Agreement as the basic principles and fundamental law governing the relationship of the parties and shall have no power to change, add to, or delete from its terms." *Agreement*, Art. 12, sec. 4. Neither party disputes that the Yard Rules are included within the Agreement. In his decision, the arbitrator determined that Trevathan's cheating on the requalification test constitutes "falsification of a company record" in violation of the Yard Rule 10.

It is undisputed that defendant requires each employee in this department to pass the acid spot qualification or requalification test in order to be competent in identifying

---

**20.** While plaintiff disputes that he cheated on the requalification test, the arbitrator found Trevathan's possession of a flow chart during the administration of the requalification test constituted cheating. Given our limited review, the Court must accept the arbitrator's finding as true. *See Misco, supra,* note 15.

**21.** In *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976), the Supreme Court noted:

> This congressional policy [of deferring to the grievance method agreed upon by the union and the employer] 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.' *Steelworkers v. American Mfg. Co.,* 363 U.S.

564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1404 (1960). Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.' *Id.,* at 569, 80 S.Ct., at 1347, 4 L.Ed.2d at 1405. They should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their dispute. Otherwise 'plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.' *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960).

a various metals. The importance of these tests is obvious in insuring the utilization of the proper materials "[f]or financial reasons, for reasons of sound construction, and for reasons of Naval regulation." *In the Matter of the Arbitration between Newport News Shipbuilding and Dry Dock Co. and United Steelworkers of America, Local 8888* at 2, Griev. No. 006200, March 29, 1990 (hereinafter *"Arbitration"*). As the arbitrator noted:

> Cheating on an acid spot test is a serious offense. It provides just cause for immediate discharge. Cheating on an acid spot test deprives the Shipyard of knowledge that an Inspector is unable to perform the essential element of his job. In the absence of such knowledge the Shipyard is deprived of the opportunity to retest an Inspector for 12 months, thus allowing a full year of potentially incompetent metals testing with possible extreme adverse results in the integrity of its product. It is for these reasons that cheating on an acid spot test is a serious offense, and that failing the test is not such an offense.

*Id.* at 11.[22] In his opinion, the arbitrator finally concluded that Yard Rule 10 is broad enough to cover cheating on required tests. *Id.* at 14.

■ Given the significance of the acid spot test and the fact that defendant regularly administers these tests, it is at least arguable that these qualification or requalification tests constitute "company records." Obviously, cheating is analogous to "falsification." Therefore, the Court determines that the arbitrator's award draws its "essence" from the agreement between Newport News and United Steelworkers as the arbitrator's opinion constitutes at least one possible interpretation of the collective bargaining agreement or Yard Rule. Plaintiff's argument appears to be no more than another possible interpretation of the same agreement or Yard Rule.

## RECOMMENDATION

With regards to the standing issue, it is recommended that defendant's Motion for Summary Judgment be treated as a 12(b)(6) Motion to Dismiss and be DISMISSED accordingly. Second, with regards to the merits of plaintiff's complaint, it is recommended that defendant's Motion for Summary Judgment be GRANTED because the arbitrator's decision and findings draw their essence from the relevant collective bargaining agreement covering plaintiff Trevathan. For similar reasons, plaintiff's Motion for Summary Judgment should be DENIED.

## DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The clerk shall mail copies of this Report and Recommendation to counsel of record for the parties. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841, 846 (4th Cir.1985) (quoting *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th

---

**22.** The Court notes that the arbitrator appears to conclude that just cause exists simply because of Trevathan's cheating on the requalification test. However, the arbitrator further held that this cheating indeed constitutes "falsification of a company record" in violation of Yard Rule 10.

Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).